Good morning, Your Honors. May it please the Court, my name is Robert Jacobs on behalf of the petitioner. I have four primary points to make. Number one, the BB should be overturned. Well, we can't overturn the BB. You do know that. Yes, sir. A, even if it were just a three-judge panel, we couldn't overturn it. We're bound by law of the circuit, and if it's an embanked case, I can assure you we won't overturn it as a three-judge panel. Understood, Your Honor. My second point is that this Court should constructively not overturn a BB, but should follow the U.S. Supreme Court case, INS v. St. Cyr, which held that an lawful permanent resident who was eligible for 212C relief at the time of a plea remains eligible for 212C relief at the present time. Well, it's not clear a BB says you can't rely on a 212C decision. You're not entitled to it, but if the BIA, in its wisdom, continues to grant it, then your client would still be eligible. Is that correct? Well, Your Honor, the BB case eliminated 212C relief. Well, it didn't. On the one hand, yes. Well, the way I read it, and I'm probably the only one who read it for the first time recently, is that the Ninth Circuit says there was no relief available under the statute, 212C, and then what I regard at the moment is dicta, because it was only a challenge to the statute or the regulation. Judge Kaczynski wrote, INS may certainly choose to, in its regulation, to provide this. Like some of the dissenters, I wondered why, if the statute was so clear. But if I understood Judge Fischer right, this might be what he was suggesting. Arguably, you have some right to relief under the regulation that you don't have under the statute. But how do you respond to that reading of what Judge Kaczynski wrote for the en banc panel and a BB? You're saying that they had a right under the regulation that they didn't have under the statute. I don't believe the regulation expanded any rights to 212C relief. What the regulation didn't do was specify what approach would be taken in terms of the statutory counterpart rule. The regulation was supposed to codify St. Cyr, which I believe said someone was eligible if they were eligible back then. But when the regulations were imposed, it didn't specify an approach. And when my petitioner was in court, the government conceded on two occasions that he was eligible for 212C relief. And that was back in 2005 and 2006. And so we were proceeding with this case as if there were no issues regarding eligibility. It wasn't until Matter of Blake was published that the judge mailed us a decision stating that my client was ineligible. And that raises a couple issues that go down to my fourth point, which was going to be that if the court is inclined to follow a BB, that since my client didn't have an opportunity to apply for admission during proceedings because he was under the belief that he was eligible for 212C relief, that we would be requesting a remand so that he could present himself at the border and apply for 212C relief at the border. Because if the primary holding in a BB is saying that this is a possibly rational intent of Congress, that immigrants or the lawful permanent residents would voluntarily do this. When my client was in court, we believed he was eligible, so that wasn't an option that was available or presented to him. If the court is inclined to follow a BB, that's what we would be recommending as our policy recommendation for this particular case. And in terms of policy recommendations for everyone, we believe that obviously the dissent in a BB is the most legally accurate analysis of the law, and also the Second Circuit Blake v. Carbone case. The other issues I want to raise are that my client would be eligible if he was in exclusion proceedings, and that the practical results of a BB, besides being absurd in that it only allows eligibility primarily for drug traffickers, money launderers, and human traffickers, it also gives too much prosecutorial discretion to the government for lawful permanent residents. Because had the government charged my client, they could have charged my client with two crimes of moral turpitude rather than charging him as an aggravated felon. This is an argument that has its counterpart in the constitutional law concerning selective prosecution. In a criminal context, prosecutors have a lot of discretion to decide what to charge. They can charge something with a long potential sentence or a shorter potential sentence, or choose to charge some person not at all. And as long as they don't rely on some constitutionally prohibited ground, like race, for example, there's no equal protection problem. Why should immigration officials have less discretion under the constitution than prosecutors? Because criminal prosecutors are analyzing their discretion based on the facts of a particular physical event that took place, whereas the prosecutorial discretion here goes right to the heart of the law. And by separating similarly situated individuals based on the law that should apply to everyone equally is a different analysis. Would that influence immigration officials to always charge the most serious offense? Or should we be concerned about that, the one that would limit the opportunities to stay in the United States? I think we should be concerned about that. Because I think that's what the practical effect of your argument would be. That's correct. I think we should be concerned. That's part of the equal protection argument that I think needs to be considered here. No, I mean, if we adopted your argument that they... Thank you. Okay. I'll reserve for rebuttal. Yeah, that's a good idea. Thank you. May it please the court. I'm here, Alyssa Gould, on behalf of the respondent, Attorney General Eric Holder, and I apologize for being a few minutes late. Your Honors, my prior argument ran over. In 1994, Petitioner Alonzo Valenzuela pled guilty to a charge of assault with a deadly weapon and was sentenced to 365 days of jail time and three years of probation. He's never disputed that this conviction constitutes an aggravated felony crime of violence. Because of his conviction, Valenzuela, as a deportable alien, is ineligible for a waiver of inadmissibility under former section INA 212C, and this court should deny his petition for review. Now, O'Beebe, as we've discussed, says two things about it, and one part is Judge Kaczynski's observation that under the regulation, nothing prohibits the BIA from continuing to grant such relief, but it's not required as a matter of statute. Now, what's the government's position on that, that it is continuing to follow the regulation, notwithstanding O'Beebe? Well, first, Your Honor, the government would assert that O'Beebe is precedential in this circuit and controls it. You don't need to assert that. I'm accepting that. I think you understand I'm not challenging that. My question is, let me say it again, Judge Kaczynski's opinion for the majority in the case explicitly says that nothing we say here implicates the regulation, although the BIA may want to rethink its position on it now. I understand, Your Honor. What is the position of the government in this case as the BIA continue to follow the regulation at its discretion? Yes, Your Honor, that the board can continue to follow the regulation, but that even under the regulation that Mr. Valenzuela would not be eligible for a waiver in this case. Okay. And what's your authority?   In this court, Mr. Valenzuela is not eligible for a waiver. The government asserts that this court has agreed that the inimicability ground for a crime involving moral turpitude is not a statutory counterpart for the deportability ground of a crime of violence. Okay. And what's your authority? Do you think Komarenko decides the equal protection argument? Yes, Your Honor. In this court, while Abebe recognized that Komarenko is no longer continuing, it does resolve the ‑‑ it upheld the statutory counterpart rule in finding that the deportation provisions for aliens convicted of CIMTs and for an aggravated felony are not substantially identical. That's another way of saying Abebe did not overrule Komarenko. If Abebe is followed strictly in this court, it makes Komarenko unnecessary. However, if this court recognizes and did recognize in Abebe the ongoing validity of the statute, Komarenko just upholds the statutory counterpart rule. Okay. Anything else that's not in your briefs? No, Your Honor. Any questions? Thank you. Counsel? When the petitioner was charged with his assault with a deadly weapon offense, the result in his one‑year sentence was not an aggravated felony. At the time, an aggravated felony required a five‑year sentence, which rendered him at the time eligible for a 212C relief as a crime of moral turpitude. And I don't believe that the retroactive application of the new aggravated felony laws implemented in 1997 should change retroactively also the evaluation of his eligibility for relief at that time. And that's one of the positions that the government is making. If I could just go back, though, and try to understand the chronology. The government's just argued that a crime of violence, aggravated felony, does not have a statutory counterpart. And I think the Ninth Circuit held that in Aguilar Ramos. Are you arguing that it did have a statutory counterpart previously? How do you respond? Previously, his crime wasn't an aggravated felony. And there also wasn't a specific category for crimes of violence because there wasn't a listing under the aggravated felony category. The only aliens ineligible had to serve a prison term of five years or more. So you say it was not an aggravated felony. Did he go to trial or did he plead guilty? He pled guilty. And what made it later an aggravated felony? In 1997, 1996, ADEPA. In 1997, IRA. IRA was passed to lower, to create a crime of violence and lower the sentence to one year or more to make it an aggravated felony. And now the government has been trying to retroactively attach an aggravated felony to crimes that when they were pled guilty to were not aggravated felonies. Is this retroactivity issue in your brief? It's implied through my argument that the client, that my petitioner, should qualify under the INS v. St. Cyr. I believe that when St. Cyr was published, it basically, you know, attempted to resolve the statutory counterpart mess that had been created throughout the circuits and simplify it saying that if you're eligible at the time, then you're eligible now. And that's why I believe the government conceded in two briefs that my client was eligible for 212C relief. And it wasn't until a matter of Blake that they changed their tune. And so I believe that this court should make a finding in favor of my client under INS v. St. Cyr, the U.S. Supreme Court case, rather than obviate it. And what part of St. Cyr helps you? The general holding that, which also was conceded in the government's brief, that it said that if 212C relief, since Congress did not, since Ira Iyer did not retroactively apply the termination of 212C relief, then it's retroactive. And if an alien or a permanent resident was eligible for that relief at the time they entered their plea, they're eligible for relief today. And I think that was intended to eliminate the mess in the circuits. And then I think a matter of Blake, because they had Operation Predator in California trying to deport all sex offenders, they were deported because people who had committed a crime that old had equities and they had long-term residency and they were winning their cases. And it frustrated the government, so they appealed and then pushed for the result that we have, a matter of Blake, and that's what changed everything. I think we need to go back to St. Cyr. And I also, again, reiterate, if the court is inclined to apply a VB, then we're requesting a remand so that my client can turn himself in at the border. The case would be reopened. It wouldn't be a self-deport. He would go to the border at Tijuana. He's from Mexico. And he could request admission and also request the filing of a 212C application, which I believe he would be eligible for despite a VB because that opportunity was not provided to him during immigration court proceedings. Okay.  Thank you, Your Honor. All right. Case is submitted. Thank you. Okay, the next case on the calendar is Romero-Pasqua v. Holder.
judges: Wolf, Tashima, Fisher